UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER LEE KELLY,

    Petitioner,                                   Civil Action No. 2:12-cv-10271

V.                                               HON. ARTHUR J. TARNOW

LLOYD RAPELJE,

    Respondent.
_____/

## OPINION AND ORDER DENYING
## PETITION FOR A WRIT OF HABEAS CORPUS AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

I.    Introduction

    This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Roger Kelly is incarcerated by the Michigan Department of Corrections, currently housed at the Saginaw Correctional Facility in Freeland, Michigan, where he is serving a life sentence for the murder of his long-time friend and business partner James Oczepek, which occurred on January 31, 2007. Petitioner killed Oczepek and then dumped his body in a landfill in Thomas Township, Michigan. Petitioner also was convicted of felony firearm, carrying a dangerous weapon with unlawful intent, and carrying a concealed weapon. He was sentenced to three to five years for the weapons convictions and two years for the felony-firearm conviction. Petitioner's convictions occurred following a jury trial in the Circuit Court in Saginaw County on October 29, 2009. He was sentenced on December 7, 2009.

    Petitioner filed his habeas petition, *pro se*, alleging that his incarceration is unconstitutional. He raises a single claim: whether the trial court's denial of his request for substitute counsel deprived him of his right to counsel. Respondent Lloyd Rapelje, through the

Attorney General's office, filed an answer arguing that his claim lacks merit and does not entitle him to habeas relief.

For the reasons stated, the Court finds that Petitioner's incarceration is constitutional and therefore will deny the petition. The Court also will decline to issue a certificate of appealability.

II.  Facts and Procedural History

The prosecution charged Petitioner with premeditated murder. He, however, argued that he shot Oczepek in self-defense. The Michigan Court of Appeals provided a summary of the facts of this case. Those facts are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *see also Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F. App'x 730 (6th Cir. 2002) (same) (citations omitted).

> The victim was a long[-]time friend and business partner of defendant. The victim was shot in a store the two men owned and his body dumped in a landfill. Investigating a report of a missing person, police detectives discovered the victim's pickup truck and blood at the scene of the crime. After first denying any involvement in the disappearance, defendant eventually admitted that he killed the victim.
>
> * * *
>
> On the first day of trial, the court took up several motions that defendant had personally filed. One of these matters involved his request for new counsel predicated, in part, on counsel's alleged failure to contact purported exculpatory witnesses. Defendant made repeated references to unnamed witness (sic) below and on appeal, but made, and now makes, no specific assertion as to what they could testify. He does assert that some number of these persons have knowledge of the nature of his relationship with the victim, but he does not indicate what that knowledge is and how it was obtained.
>
> In one confusing correspondence with the court, defendant appeared to assert that he was asked by counsel to summarize the potential evidence coming from several persons on his witness list, who, according to defendant, he never asked his prior counsel to interview. Defendant appears to suggest that, because

> he never requested the witnesses be interviewed, he can have no way to know "if these statements are complete" unless counsel personally interviews them. If defendant has an incomplete understanding of what their evidence might be, he cannot reliably assert that they have first-hand knowledge of relevant evidence. In any event, as on appeal, he failed to identify these witnesses. Moreover, defendant did offer witnesses that testified regarding his relationship with the victim and testified himself to the contentious nature of the relationship.

*People v. Kelly*, No. 296500, 2011 WL 2140369, *1 (Mich. Ct. App. May 31, 2011) (unpublished).

The Court also finds the following facts pertinent to the case.

Oczepek's sister knew Petitioner and her brother were having problems over their business ventures. After Oczepek failed to pick up her son from school and because he could not be reached on his cell phone, she filed a missing-persons report. The next day, she called Petitioner; he said he did not know her brother's whereabouts and that he had not seen him for about two weeks.

The police investigating the missing-persons report went to Petitioner's house and spoke with him. He told them that he had not since Oczepek for about three weeks. They then went to the store. Shortly afterward, Petitioner arrived. He gave the officers permission to search the store. While there, the officers noted bloodstains on the outside step and in the backroom, which tested positive for human blood. During a search of Petitioner's car, police officers found a revolver with a bloodstain. The stain tested positive for human blood and matched Oczepek's DNA.

A search of Petitioner's home revealed bloody jeans and tennis shoes in the breezeway. The blood was human and also matched Oczepek's DNA. Eventually, Petitioner was arrested.

Petitioner testified in his trial. He described the deterioration of his friendship with Oczepek. He said Oczepek did not contribute to the operation of the store. As a result, he ran the store, as well as his contracting business. He worked seven days a week. Because he had difficult coping, he turned to alcohol.

Petitioner testified that, in May 2006, Oczepek began behaving violently toward him and his wife. He reported Oczepek's aggression to the police several times. Sergeant Gary Breidinger testified for the defense; he acknowledged that Petitioner had called the police on several occasions.

Petitioner said Oczepek threatened to shoot his wife unless he agreed to the following: not call the police, sign a partnership dissolution without the assistance of counsel, sign a duplex over to him, and give him $40,000. According to Petitioner, if he satisfied those conditions, then Oczepek said he would leave him alone. When Petitioner was unable to satisfy those conditions, Oczepek became angry and came to the store, several times, when Petitioner was alone, brandishing a gun. Petitioner said he kept calling the police but no one responded. He then purchased a gun for protection but did not obtain a permit.

On the day of the incident, Petitioner met with Oczepek at the store. The two began struggling. Oczepek attempted to get the gun Petitioner had purchased but Petitioner got to it first. Oczepek pushed Petitioner to the ground and, when Petitioner hit the ground, he fired five shots. Petitioner said he shot Oczepek because he thought his life was in danger.

After receiving his *Miranda*[1] rights, he indicated that he understood his rights and was willing to waive them. Petitioner told the police that, on the day of the incident, Oczepek had

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

been berating and shoving him and eventually punched him in the chest. He said he picked up his gun and began firing it until it was empty. He then picked up a watering can and hit Oczepek with it several times. He said he wrapped the body in tarp and transported it to a landfill. Petitioner eventually led the police to the landfill, where Oczepek's body was recovered.

The medical examiner testified that Oczepek's injuries were consistent with having been inflicted during a struggle. He had five gunshot wounds, a fractured right arm, a dislocated right ankle, and several bruises, abrasions, and lacerations. The multiple gunshot wounds caused his death.

Petitioner was arrested on February 1, 2007. Trial began on October 20, 2009. The first reason for the delay of trial was due to the unavailability of a lab witness. See Hr'g Tr. 3, Nov. 6, 2007, ECF No. 7-3. Petitioner agreed to the adjournment. The next delay was at Petitioner's request, to review files and to request discovery. See Hr'g Tr. 3, Feb. 14, 2008, ECF No. 7-4. The third delay was after Petitioner requested an independent-psychiatric examination. See Mot. Hr'g Tr. 4, Apr. 10, 2008, ECF No. 7-5. At the next hearing, the prosecutor brought a motion to determine the status of Petitioner's request for the independent-psychiatric examination, which resulted in a delay. See Mot. Hr'g Tr. 2-3, Aug. 4, 2008, ECF No. 7-8. Petitioner again agreed. At the next hearing, Petitioner requested an adjournment to procure the preliminary-examination transcript and additional discovery; trial was then scheduled for February 18, 2009. See Mot. Hr'g Tr. 2-3, 6, Nov. 24, 2008, ECF No. 7-9. Then, on the day of trial, Petitioner requested an adjournment to finalize his witness list. The trial was adjourned to April 28, 2009. See Mot. Tr. 2-3, Feb. 18, 2009, ECF No. 7-10.

Subsequently, on the day of the status conference, April 20, 2009, Petitioner requested new counsel; he told the judge that he needed new counsel because he and his retained attorney were having difficulties. Petitioner and his counsel both agreed that it would be best for him to get appointed counsel since he could no longer pay his retained counsel. The trial court judge appointed new counsel as a result and the trial was adjourned. See Hr'g Tr. 4, Apr. 20, 2009, ECF No. 7-11.

Petitioner's new counsel then filed a motion to adjourn so that he could review the files and prepare for trial. At this motion hearing, Petitioner disagreed with his new counsel and again requested another attorney. He voiced his concerns to the judge about the trial process and the length of time it was taking to get to trial, at that point, more than two years. The trial judge denied Petitioner's request and granted counsel's motion for a continuance. See Hr'g Tr. 3-4, July 13, 2009, ECF No. 7-12.

Petitioner also wrote to the judge several times before trial. In a letter dated October 9, 2009, Petitioner made another request that counsel be replaced. On the first day of trial before jury selection, he made a statement, on the record, regarding his request and again on the fifth day of trial. He stated his objections; trial counsel's failure to investigate his witnesses and to schedule an independent-psychiatric examination, and his general disapproval with how long the trial was taking. The trial judge allowed Petitioner to voice his concerns before trial and during trial but denied his requests. See Trial Tr. vol I, 14 Oct. 20, 2009, ECF No. 7-13; Trial Tr. vol. V, 3 Oct. 27, 2009, ECF No. 7-17.

After the conclusion of trial but before sentencing, Petitioner filed an application for leave to appeal and a motion for a peremptory reversal, *pro per*, with the Michigan Court of

Appeals, alleging that his rights were violated when the trial court failed to stay his case in order to conduct an independent-psychiatric examination. The Court of Appeals dismissed the application and the motion for failure to conform with the court rules. *People v. Kelly*, No. 294966 (Mich. Ct. App. Dec. 28, 2009). Petitioner did not file an application for leave to appeal that decision with the Michigan Supreme Court.

Following his sentencing, Petitioner, through counsel, filed an appeal with the Court of Appeals raising the same claim raised in this petition. He also filed a supplemental brief, *pro per*, raising additional claims concerning the ineffectiveness of trial counsel; failure to investigate, present witnesses, file motions, schedule an independent-psychiatric examination, and subject the case to meaningful adversarial testing. On May 31, 2011, the Court of Appeals affirmed Petitioner's convictions and sentences. *Kelly*, 2011 WL 2140369, at *1, *3. The Court of Appeals also denied his motion for reconsideration. *People v. Kelly*, No. 296500 (Mich. Ct. App. Aug. 8, 2011). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court. His application was denied on December 28, 2011. *People v. Kelly*, 490 Mich. 974, 806 N.W.2d 739 (2011) (Table).

Petitioner neither filed a post-conviction motion for relief from judgment with the state trial court nor a petition for a writ of certiorari with the United States Supreme Court. Rather, on January 20, 2012, he filed this habeas petition.

III.    Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when a state court has applied clearly established federal law in an objectively unreasonable manner. *Id.* at 409. A federal habeas court may not issue a writ if it concludes the state court applied clearly-established federal law merely erroneously or incorrectly. *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. ---, ---, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion

8

was unreasonable." *Harrington*, 131 S.Ct. at 786 (citation omitted). Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.

A state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011).

With those standards in mind, the Court proceeds to address Petitioner's claim.

IV. <u>Discussion</u>

Petitioner claims that he is entitled to habeas relief because the trial court violated his right to counsel under the Sixth Amendment by refusing to appoint new counsel after his requests. He alleges that he made those requests on the basis of a breakdown in the attorney-client relationship that arose out of a disagreement with counsel over which witnesses to call and what defenses to present.

The Sixth Amendment provides, in relevant part, "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const.

9

amend. VI. "A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Powell v. Alabama*, 287 U.S. 45, 53 (1932). However, that right is generally cognizable only to the extent defendant can retain private counsel; an indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

The right to counsel of one's choice is not absolute and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The *Wheat* Court stated:

> Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant. Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government.

*Id.* A trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.* at 163-64, and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Further, "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) (citations omitted). Additionally,

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the amendment is to guarantee an effective advocate for each criminal defendant rather than ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat*, 486 U.S. at 159.

Because there is no absolute right to appointed counsel of choice and because the focus of the Sixth Amendment's counsel of choice inquiry is on effective advocacy, an indigent defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the

10

substitution of counsel. *See United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (footnote and citations omitted). Good cause in turn includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [the] attorney in order to warrant substitution." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (citations omitted). When a defendant requests the appointment of new counsel, the decision regarding whether to grant this request is committed to the sound discretion of the trial court. *See United States v. White*, 451 F.2d 1225 (6th Cir. 1971) (citations omitted). "Because a trial court's decision on substitution is so fact-specific, it deserves deference." *Martel v. Clair*, --- U.S. ---, ---, 132 S.Ct. 1276, 1287 (2012). A defendant wishing to substitute counsel must "bring any serious dissatisfaction with counsel to the attention of the court." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131-32).

      The Sixth Circuit cites four factors to consider when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001) (citation omitted); *see also Benitez*, 521 F.3d at 632 (same) (citations omitted). Those factors are balanced with the public's interest in the prompt and efficient administration of justice. *Id.*; *see also United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006) (same). Moreover, all circuits agree, courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer. *See*, e.g., *Martel*, 132 S.Ct. 1276, 1287-88 (2012) (citing *Iles*, 906 F.2d at 1130); *see also Benitez*, 521 F.3d at 535-36 (same). A request for substitute counsel on the day of trial or a few

11

days before trial is considered untimely. *See United States v. Trujillo*, 376 F.3d 593, 606-607 (6th Cir. July 22, 2004); *United States v. Wilhite*, 108 F. App'x 367, 369 (6th Cir. 2004) (same).

Petitioner cites two reasons supporting his request for substitute counsel. First, he claims that because he had a disagreement with counsel over which witnesses to call to support his self-defense claim, substitute counsel should have been appointed. Second, he argues that trial counsel should have been replaced because he failed to pursue an insanity defense.

With respect to Petitioner's first contention, the Court of Appeals adhered to the good-cause standard when denying relief on his substitute-counsel claim, finding that the trial court did not abuse its discretion because he failed to show that there was a legitimate difference of opinion with counsel regarding the witnesses to be called. According to Petitioner, the witnesses he wanted to call would have detailed the contentious relationship between him and Oczepek as one of threats, harassment, intimidation, extortion, embezzlement, and stalking. However, as noted by the Court of Appeals, Petitioner failed to specifically state the testimony of those witnesses. Plus, he did offer witnesses that testified regarding his relationship with Oczepek. And, because he himself testified, he was able to state for the jury his contentious relationship with Oczepek. Thus, Petitioner cannot show that the other witnesses would have added anything substantial to his testimony. Moreover, counsel's strategic decisions regarding what witnesses to call at trial are "virtually unchallengeable." *Awkal v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010). The Court's "concern is not to decide, using hindsight, what [it] think[s] would have been the *best* approach at trial. Instead, [the Court] must only consider if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the

circumstances." *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).

Thus, with respect to this claim, the Court finds that the Court of Appeals's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent and habeas relief is not warranted in regard to this issue.

Next, Petitioner argues that counsel should have been replaced because counsel failed to pursue an insanity defense. However, Petitioner neither claimed in the state courts nor does he in this Court that he suffers from a mental illness or disease that would have impaired his understanding of the nature and object of the proceedings against him or his ability to have assisted in his defense. Rather, he was found competent to stand trial. Further, the trial court did grant Petitioner's motion for an independent-psychiatric examination but an order was not entered. Mot. Hr'g 5, Apr. 10, 2008, ECF No. 7-6; Hr'g Tr. 3, Aug. 4, 2008, ECF No. 7-8. Also, Petitioner pursued a self-defense claim and not an insanity-defense claim.

> In addressing this issue, the Court of Appeals stated:
>
> In all of the cited correspondence sent to the trial court, defendant never indicated that he wanted counsel replaced because of a fundamental disagreement over pursing an independent[-]psychiatric evaluation. Indeed,
>
> defendant did not even tell the court that he believed he was legally insane at the time of the crime.
>
> As defendant offers no proof on appeal that he suffers from mental illness or mental retardation, let alone that one of these disorders affected his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, there is no basis for this Court to conclude that the affirmative defense of insanity was a viable defense that his replacement counsel should have pursued vigorously.

13

*Kelly*, 2011 WL 2140369, at *2 (citation omitted).

As noted by the Court of Appeals, in his various correspondences sent to the trial court, Petitioner never indicated that he wanted trial counsel replaced over a disagreement with respect to pursuing an independent-psychiatric evaluation. Thus, the Court agrees that his claim must fail; he has not met his burden of establishing good cause. Therefore, the Court of Appeals's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Habeas relief is not warranted.

V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his habeas petition. Therefore, the petition is DENIED.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court grants relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id*. at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claim and that

reasonable jurists could not debate the correctness of the Court's ruling. A certificate of appealability is not warranted.

      Accordingly,   IT IS ORDERED that the petition for a writ of habeas corpus [ECF No. 1] is DENIED WITH PREJUDICE.

      IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

      S/Arthur J. Tarnow
      Arthur J. Tarnow
      Senior United States District Judge

Dated: April 22, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on April 22, 2013, by electronic and/or ordinary mail.

      S/Catherine A. Pickles
      Judicial Assistant